UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSHUA H JUMBO, §
 §
　　　Plaintiff, §
 §
VS. § CIVIL ACTION NO. 4:15-CV-1451
 §
DOLGENCORP OF TEXAS INC, *et al*, §
 §
　　　Defendants. §

## ORDER AND OPINION

Before the Court are Defendant's Motion for Summary Judgment (Document No. 33), Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Document No. 34), and Defendant's Reply in Support of its Motion for Summary Judgment (Document No. 35). After considering these documents, the facts in the record, and the applicable law, the Court concludes that Defendant's Motion for Summary Judgment (Document No. 33) is granted in part and denied in part.

## FACTS

Plaintiff Joshua Jumbo, an American citizen of Nigerian origin, was hired as a Store Manager Candidate by Defendant Dolgencorp of Texas Inc., which does business under the name Dollar General, on May 4, 2012. Document No. 33 at 7; Document No. 34 at 1. Plaintiff was hired by District Manager Nelson Ejiogu, who is also of Nigerian origin. Document No. 33 at 7; Document No. 34 at 1. After completing a training program, Ejiogu promoted Plaintiff to Store Manager on October 13, 2012. Document No. 33 at 8, Document No. 34 at 1. During the program, Ejiogu evaluated Plaintiff and rated him as satisfactory in all categories. Document No. 33-8 at 10–18.

On May 20, 2013, Plaintiff filed a complaint against Ejiogu as his District Manager.

Document No. 33-2 at 31. Plaintiff complained that Ejiogu was discriminating against him based on his national origin by (1) failing to provide Plaintiff with an Assistant Store Manager; (2) refusing to allow Plaintiff to hire an Assistant Store Manager on his own; (3) refusing to teach Plaintiff how to use the job application review software; (4) threatening to transfer Plaintiff because Ejiogu and Plaintiff were "both Nigerian"; (5) using the word "nonsense" towards Plaintiff; and (6) telling Plaintiff that he did not think Plaintiff was "the most honest person in the world." Document No. 33-6 at 7–8. Several weeks later on June 14, 2013, Plaintiff filed another complaint against Ejiogu. Document No. 33-6 at 9. In the complaint, Plaintiff alleged that Ejiogu: (1) failed to provide him with an Assistant Store Manager; (2) threatened to fire him because of bad store performance; (3) treated him differently from other similarly situated Store Managers because of his national origin; (4) made disparaging comments about him in front of his employees; and (5) "started a pattern of harassment, abusive language, character assassination, employment termination threats, and humiliation towards [Plaintiff]." Document No. 33-6 at 9. The following week on June 21, 2013, Plaintiff filed another complaint against Ejiogu alleging that Ejiogu retaliated against Plaintiff for filing his complaints by not letting Plaintiff hire an Assistant Store Manager or post a "We're Hiring" sign at the store. Document No. 33-6 at 10–11. Plaintiff did not file another complaint until January 2014.

On January 7, 2014, Plaintiff was required to complete several weekly tasks (Super Tuesday Tasks), which included price changes and merchandising schematics for the store. At 3:00 AM on January 7th, Plaintiff marked several of the tasks "Complete" on the store's progress reporting system (the "START" system). Several hours later, Plaintiff emailed his District Manager, Ejiogu, to let him know that all of his Super Tuesday Tasks had been completed. When Ejiogu visited the store later that morning, however, the tasks that Plaintiff had marked as

completed were not done. After speaking with Ejiogu in the store, Plaintiff filed a complaint with Defendant's Employee Response Center (ERC), alleging that Ejiogu was trying to terminate him because of his national origin and in retaliation for the complaints Plaintiff filed in May and June 2013. Document No. 33-6 at 15–16.

The next day, January 8, 2014, Ejiogu and the Regional Human Resources Manager, Ty Jones, spoke with Plaintiff about the uncompleted Super Tuesday Tasks. Document No. 33-2 at 54–55. During the meeting, Ejiogu and Jones terminated Plaintiff for falsifying company records. *Id.*; Document No. 33-7 at 1.

After his termination, Plaintiff filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division on May 19, 2014, and received a right-to-sue letter from the Equal Employment Opportunity Commission on March 5, 2015. Document No. 1 at 10–11. Plaintiff filed suit against Defendant on May 29, 2015, which is within 90 days of receiving the letter. Document No. 1.

## STANDARD OF REVIEW

"In considering a motion for summary judgment, courts 'must view the evidence in the light most favorable' to the party opposing summary judgment." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942 (5th Cir. 2015) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)). This Court will grant summary judgment if the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where the nonmoving party has the burden of proof at trial, the party may not rely solely upon "mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A

dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that "might affect the outcome of the suit under the governing law" are material. *Id.* Where the moving party does not have the burden of proof at trial, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## DISCUSSION

Plaintiff asserts two claims: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981, and the Texas Commission on Human Rights Act (TCHRA); and (2) retaliation in violation of Title VII and 42 U.S.C. § 1981. Document No. 16 at 4–5.

### A.  Employment Discrimination

The Court looks to the substantive law to determine which facts are material. *Anderson*, 477 U.S. at 248. Under Title VII and the TCHRA, an employer commits an unlawful employment practice if it fails or refuses to hire an individual, terminates an individual, or otherwise discriminates against an individual relating to his or her "compensation, terms, conditions, or privileges of employment" based on that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); *accord* TEX. LAB. CODE § 21.051 (also protecting an individual from employment discrimination on the basis of age and disability). Because Title VII and the TCHRA are "effectively identical" in regards to employment discrimination, both Texas and Federal courts use the same approach when analyzing a claim brought under either statute.

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) ("Section 21.051 is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination. . . . As a result, Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases."). The outcome of Plaintiff's discrimination claims will be the same under federal and state law; yhus, the Court analyzes the issues "only under the applicable federal precedents." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 n.4 (5th Cir. 2007) (per curiam).

The main question in an employment discrimination action under Title VII is "'whether the defendant intentionally discriminated against the plaintiff.'" *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (quoting *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004)). "Intentional discrimination can be established through either direct or circumstantial evidence." *Id.* The United States Supreme Court recognized that plaintiffs in discrimination cases will not always be able to present direct evidence of discrimination, so the Court developed a test through which courts could consider circumstantial evidence in analyzing an employment discrimination claim. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979))). Under that test, the plaintiff bears the burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To meet his prima facie burden, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position . . . ; (3) [he] suffered an adverse employment action; and (4) others similarly situated but outside the protected class were

treated more favorably." *Alvarado*, 492 F.3d at 611.

If the plaintiff succeeds in presenting a prima facie case, the burden shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. The defendant's burden is one of production, not persuasion. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253. If the defendant meets its burden, then the plaintiff has the opportunity to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were a pretext for discrimination." *Id.*

Plaintiff alleges that he was discriminated against because of his Nigerian national origin on several occasions. He alleges that (1) he was hired as a Store Manager Candidate instead of being hired directly as a Store Manager; (2) Ejiogu failed to train him on the hiring software; (3) Ejiogu failed to provide Plaintiff with an Assistant Store Manager (ASM); (4) Ejiogu threatened to transfer him to another district; (5) Ejiogu used abusive language toward Plaintiff, including the word "nonsense"; (6) Ejiogu refused Plaintiff's request for security gates at the store; (7) Ejiogu did not give Plaintiff an annual performance review or raise; (8) Ejiogu excessively monitored Plaintiff's store; (9) Plaintiff's payroll budget was unfairly cut; and (10) Plaintiff was terminated.

Because Plaintiff does not present any direct evidence of discrimination, to survive summary judgment, he must establish a prima facie case of discrimination. *See Trans World Airlines*, 469 U.S. at 121. The parties agree that Plaintiff is a member of a protected class, and except with regard to Allegation No. 1, the parties agree that Plaintiff was qualified for his position. So, for Allegation Nos. 2–10, the parties dispute only the third and fourth elements of

the *McDonnell Douglas* test.

    *i.*    *Allegation Nos. 2, 3, 5, 6, and 8 Fail the Third Element of the* McDonnell Douglas *Test*

Under the third element of the *McDonnell Douglas* test, the plaintiff must show that he suffered an adverse employment action. *See Alvarado*, 492 F.3d at 611. "[A]dverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). Accordingly, Plaintiff's Allegation Nos. 2, 3, 5, 6, and 8 do not satisfy the third element of the *McDonnell Douglas* test. None of the actions that Plaintiff alleges were discriminatory in those allegations amount to adverse employment actions because none of those actions resulted in Plaintiff losing compensation or being fired or demoted.

In Allegation No. 2, Plaintiff complains that he was discriminated against when Ejiogu failed to train him on the hiring software, but Plaintiff was able to learn how to use the software from other Store Managers and from the Computer Based Learning (CBL) program in his store. Further, his inability to use the software did not result in his demotion, transfer, termination, or in a loss of compensation. [1] "[T]here is no reasonable basis on which to conclude that a denial of such training, so peripheral to [Plaintiff's] main duties . . . , would 'tend to' result in a change of employment status, benefits or responsibilities. Thus a denial of such training is not an adverse employment action covered by Title VII." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999); *see also Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 361 (5th Cir.

---

[1] Additionally, Plaintiff cannot show that others similarly situated were treated differently because Ejiogu did not train any Store Managers on how to use the hiring software.

2005) (per curiam) (holding that failure to provide plaintiff with computer training was not an adverse employment action because it was not a decision about benefits, compensation, or employment).

In Allegation No. 3, Plaintiff alleges that Ejiogu discriminated against him by not providing his store with an ASM for twelve weeks. Document No. 33-8 at 5; Document No. 34 at 1. Plaintiff claims that Ejiogu would not allow him to hire an ASM, and as a result, Plaintiff was overworked. However, Plaintiff admitted in his deposition that he had at least two other employees, acting as Lead Sales Associates, who could perform most of the duties performed by an ASM. Document No. 33-2 at 25–26. In fact, while he was without an ASM, Plaintiff delegated several responsibilities to his Lead Sales Associates, including opening and closing the store; setting up planograms, sales promotions, and price changes; and making on-hand adjustments to the store inventory. *Id.* The only responsibility that Plaintiff could not delegate to a Lead Sales Associate was taking the deposit to the bank. Document No. 33-2 at 25. Because Plaintiff was still able to delegate duties typically performed by an ASM to his Lead Sales Associates, the absence of an ASM did not materially affect Plaintiff's job duties. Plaintiff was not required to take on extra responsibilities that were not in his job description or that he would not have performed with an ASM in the store. Plaintiff testified that even with an ASM in the store he still took the bank deposit and did most of the ordering for the store himself. Document No. 33-2 at 25–26. Because not providing Plaintiff's store with an ASM was not an "ultimate employment action" and did not result in a material change to Plaintiff's "terms and conditions of employment," Plaintiff did not suffer an adverse employment action. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330–31 (5th Cir. 2004) (holding that when determining whether an employment decision is an adverse employment action, the court is

"'concerned solely with ultimate employment decisions'" (quoting *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000))).

In Allegation No. 5, Plaintiff claims that Ejiogu's use of "abusive" language towards him is discriminatory. Plaintiff alleges that Ejiogu called Plaintiff's suggestions and merchandising ideas "nonsense," told Plaintiff that Ejiogu could do "whatever he wanted," and stated that Plaintiff was not "the most honest person in the world." Abusive language that does not relate to Plaintiff's national origin and that does not alter the terms and conditions of Plaintiff's employment cannot satisfy the *McDonnell Douglas* test. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (holding that plaintiff's coworkers' comments calling plaintiff "old man," "pops," "old fart," and "grandpa" were not discriminatory because they were sporadic). Because Plaintiff has offered stray remarks as circumstantial evidence of discrimination, "the court applies a flexible two-part test, [first articulated in *Russell v. McKinney Hospital Venture*,] under which the comments must show: '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015) (quoting *Reed*, 701 F.3d at 441).

The Supreme Court has routinely held that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted); *accord Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001). Plaintiff alleges that Ejiogu's comments were made before July 2013, and Plaintiff has not presented any evidence that Ejiogu continued to make those kinds of comments to Plaintiff after July 2013. Unlike other cases where the Fifth Circuit has determined that comments were

discriminatory, the comments that Plaintiff complains of here do not refer to Plaintiff's protected status. *See Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (holding that supervisor's comments angrily complaining about having to get someone to fill in for employee while she was on maternity leave indicated pregnancy animus); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (holding that supervisor's comments calling employee an "old bitch" indicated age animus). As a result, the comments do not reflect a discriminatory animus towards Plaintiff.

In Allegation No. 6, Plaintiff claims that he was discriminated against when Defendant refused to grant his request to install security gates at the store. He alleges that because he did not have security gates his store was burglarized, which resulted in Plaintiff not receiving a shrink rate bonus at the end of the year. Document No. 34 at 7. The summary judgment evidence shows that the shrink rate (the rate of loss of inventory as a result of theft, damage, error, etc.) for Plaintiff's store in 2013 was 6.87%. Document No. 33-12 at 2. According to the evidence in the record, to be eligible for a shrink rate bonus at the end of the year, the store must have a shrink rate of less than 5.35%. *Id.* The total recorded loss for the store from the burglaries was $555.00 for 2013. *Id.* Even without the burglaries, the store's shrink rate for 2013 would have been 6.82%. Therefore, even if Defendant had installed the security gates on Plaintiff's store, he still would have been ineligible for the shrink bonus. As a result, Plaintiff did not suffer an adverse employment action because of a lack of security gates at his store.[2]

In Allegation No. 8, Plaintiff alleges that Ejiogu discriminated against him by excessively

---

[2] Besides conclusory allegations, Plaintiff has not presented any competent summary judgment evidence to refute Defendant's evidence. Plaintiff makes several allegations that Ejiogu doctored the burglary loss numbers and did so to hurt Plaintiff's store, but he offers no evidence to support any of these allegations. As a result, the Court cannot consider those allegations. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence. . . . However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994))).

monitoring Plaintiff's store. Plaintiff points to only one incident where he felt he was being excessively monitored by Ejiogu. He claims that Ejiogu once parked across the street from the store and watched the store from the parking lot. Document No. 33-2 at 50. When Ejiogu saw a customer leave with a large amount of merchandise, he asked Plaintiff if the customer had paid for everything. *Id.* Plaintiff does not allege that Ejiogu watched the store in this way at any other time. Document No. 33-2 at 53. The Fifth Circuit has held that monitoring of employee performance, even if the monitoring might have some tangential effect upon an ultimate employment decision, is not an adverse employment action. *See Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997) (holding that close monitoring of an employee's conversations, criticism of her work and conduct, and downsizing her department were not adverse employment actions because they did not constitute ultimate employment decisions). Accordingly, Plaintiff has not alleged an adverse employment action in Allegation No. 8.

Because Plaintiff has failed to establish one of the elements of a prima facie case for Allegation Nos. 2, 3, 5, 6, and 8, Defendant is entitled to summary judgment on those Allegations.

### ii. Allegation No. 1

Defendant is also entitled to summary judgment on Allegation No. 1. Plaintiff alleges that Ejiogu did not hire him directly as a Store Manager because Plaintiff is Nigerian. Plaintiff testified that Ejiogu stated in his interview that he would not hire Plaintiff as a Store Manager "because of the Nigerian reputation."[3] Document No. 33-2 at 11. While Ejiogu's comment meets the two-part *Russell* test—the comment shows a discriminatory animus towards Nigerians and

---

[3] Because the Court makes all reasonable inferences in favor of the nonmovant and does not make credibility determinations, the Court assumes, without deciding, that Ejiogu made the statement. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)).

Ejiogu is the person who decided to hire Plaintiff as a Store Manager Candidate—Plaintiff still fails to satisfy his prima facie burden for Allegation No. 1. *See Squyres*, 782 F.3d at 236 (quoting *Reed*, 701 F.3d at 441).

Plaintiff was not qualified to be hired directly as a Store Manager, and Plaintiff cannot point to others outside of his protected class who were similarly situated and treated differently. In 2012, Defendant hired seven people as Store Manager Candidates. Document No. 33-8 at 4. All of these candidates, including Plaintiff, were hired externally. For the year 2012, Defendant did not hire any external applicants directly as Store Managers. All external applicants are first hired as Store Manager Candidates because Defendant wants to train those candidates on its policies and procedures before promoting them to Store Manager. Document No. 33-8 at 3. Only three candidates were eventually promoted to Store Manager, while the other four were demoted to Assistant Store Manager. Plaintiff was one of the three candidates promoted. Further, Plaintiff conceded in his deposition that he was hired as a Store Manager Candidate so he could be trained to be a Store Manager for Defendant. Document No. 33-2 at 15.

Plaintiff argues that Aurora Mora was hired directly as a Store Manager and did not have to go through the Store Manager Candidate program. Document No. 34 at 5. Aurora Mora, however, had been an Assistant Store Manager for Defendant before her promotion to Store Manager. Document No. 35-2 at 2. Mora was already familiar with Defendant's processes, practices, procedures, manuals, and company communications and therefore did not need to go through the Store Manager Candidate program. Accordingly, Mora is not similarly situated to Plaintiff and is not a valid employment comparator.

Because Plaintiff was not qualified to be hired directly as a Store Manager and because he has failed to point to others who were similarly situated and hired directly as Store Managers,

Plaintiff has failed to meet his prima facie burden for Allegation No. 1. As a result, Defendant is entitled to summary judgment on Allegation No. 1.

### iii. Allegation No. 4

Next, in Allegation No. 4, Plaintiff alleges that he was discriminated against because Ejiogu threatened to transfer him to another district because they were both Nigerian. Plaintiff, however, fails to present a prima facie case of discrimination because he was not transferred to another district and therefore cannot show that he suffered an adverse employment action. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Therefore, Defendant is entitled to summary judgment on Allegation No. 4.

### iv. Allegation No. 7

In Allegation No. 7, Plaintiff alleges that Ejiogu discriminated against him because Ejiogu failed to give Plaintiff an annual performance review and accompanying raise. Plaintiff alleges that he was not evaluated, but the uncontroverted summary judgment evidence shows that he was evaluated in March 2013, five months after he became a Store Manager. Document No. 33-8 at 20–23. In his evaluation, Ejiogu rated Plaintiff favorably, giving him a "Very Good" rating in ten categories, a "Good" rating in four categories, and a "Needs Improvement" rating in only two categories. After receiving a favorable evaluation, Plaintiff was given a 2.7% raise, increasing his salary from $41,938 per year to $43,070 per year. Document No. 33-8 at 3. In his response, Plaintiff does not dispute that he was evaluated or that he actually received a raise after the March 2013 evaluation. Document No. 34 at 8. Defendant is entitled to summary judgment on Allegation No. 7. *See Scott*, 550 U.S. at 380.

### v.  Allegation No. 9

In Allegation No. 9, Plaintiff alleges that his store's payroll budget was cut because of his national origin. However, Defendant has presented summary judgment evidence showing that not only was Plaintiff's payroll budget not cut, but it actually increased. *See id.* The record shows that the average payroll budget for the weeks of October 13, 2012, to May 24, 2013, was $2,085 per week. Document No. 33-11 at 2. The average payroll budget for the weeks of May 25, 2013, to January 10, 2014, was $2,134 per week. Document No. 33-11 at 3. Plaintiff has not presented any evidence to refute Defendant's summary judgment evidence, and in fact does not even address Defendant's argument in his Response. Document No. 34 at 9. As a result, Defendant is entitled to summary judgment on Allegation No. 9.

### vi.  Allegation No. 10

In Allegation No. 10, Plaintiff alleges that he was terminated from his position as Store Manager because of his national origin. Plaintiff was terminated on January 8, 2014. According to Defendant, Plaintiff was terminated for falsifying company records. Document No. 33 at 35. On January 7, 2014, Plaintiff was required to complete several tasks for the store, which were called "Super Tuesday" tasks. The tasks included making price changes, putting up planograms, and other merchandising duties. When the jobs were completed, Store Managers were required to mark the tasks as "Completed" in the START system. According to Defendant, Plaintiff marked the tasks as "Completed" when they had not actually been completed, and then emailed Ejiogu telling him that the tasks were done. Later that day, Ejiogu visited the store and found that the tasks had not been completed. Ejiogu then met with Plaintiff and let him know that Ty Jones, the Regional Human Resources Manager, would be at the store the next day to meet with Ejiogu and Plaintiff. Plaintiff stated in his deposition that Ejiogu told him that he was telling Plaintiff

about the meeting because they were both from Nigeria and he wanted to look out for Plaintiff. Document No. 35-3 at 6. The next day, January 8, 2014, Jones, Ejiogu, and Plaintiff met in the store. Plaintiff verified that he had sent the email to Ejiogu stating that the Super Tuesday tasks had been completed. Document No. 33-2 at 54. After Jones took Plaintiff's written statement, Plaintiff was terminated.

It is undisputed that Plaintiff's termination meets the first three elements of the *McDonnell Douglas* test. Defendant argues that Plaintiff cannot demonstrate that others who were similarly situated were treated more favorably than he was treated. The Court agrees. Plaintiff has presented no evidence of any Store Manager in a similar situation who was not terminated. In response to Defendant's argument and summary judgment evidence, Plaintiff argues only that the evidence has been doctored and that he completed the Super Tuesday tasks. However, "unsubstantiated assertions are not competent summary judgment evidence." *Ragas*, 136 F.3d at 458. Plaintiff cannot rely on mere allegations, but "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his . . . claim." *Id.* Plaintiff has failed to do so here.

Even assuming that Plaintiff did satisfy his prima facie burden and Defendant was required to articulate some legitimate, nondiscriminatory reason for Plaintiff's termination, Defendant has satisfied its burden. *See Burdine*, 450 U.S. at 255 (holding that to satisfy its burden to present a legitimate, nondiscriminatory reason for the employment decision, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection"). Defendant presented summary judgment evidence showing that Plaintiff falsified company records by marking tasks complete when they were not. Included in the summary judgment evidence were affidavits from Jones and Ejiogu; pictures taken during

Jones's investigation showing price changes that had not been completed, planograms that had not been set up, and the fulfillment box, which was full of discount flyers and other promotional material, that had not been worked; a screenshot of the START system with all of the tasks marked as complete; a copy of the email Plaintiff sent to Ejiogu; and the written statement from Plaintiff stating that he had completed the tasks. Document No. 33-6 at 17–19; Document 33-8 at 2–8, 27–40; Document No. 33-10 at 2–6.

Where, as here, the defendant articulates "a reason that, if believed, would support a finding that the action was nondiscriminatory, 'the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the factfinder must decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination].'" *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001) (alterations in original) (quoting *Russell v.*, 235 F.3d at 222). The burden shifts back to Plaintiff to demonstrate that "the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. To meet his burden, Plaintiff must "produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Plaintiff may show pretext either through "evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). Here, Plaintiff has not presented any evidence to rebut Defendant's articulated reason or show that the explanation is false. Plaintiff's only argument is that he did complete the tasks and that Defendant doctored and forged its evidence. Document No. 34 at 10–11. But Plaintiff does not present any competent summary judgment evidence to support his assertions. *See Ragas*, 136 F.3d at 458 ("Needless to say, unsubstantiated assertions are not competent summary judgment

evidence." (citing *Celotex Corp.*, 477 U.S. at 324)). Plaintiff's self-serving statement that he completed the tasks and conclusory allegation that Defendant presented doctored evidence are insufficient to create a genuine issue of fact as to whether Defendant terminated him because of his national origin. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (holding that plaintiff's self-serving statements that he did not commit sexual harassment were insufficient to create fact issue as to whether employer's reasons for termination were false).

Because Plaintiff has failed to meet his burden under the *McDonnell Douglas* burden-shifting test, his national origin discrimination claim fails. Accordingly, there is no genuine issue of material fact as to Plaintiff's claim of discrimination under Title VII and the TCHRA, and Defendant is entitled to summary judgment on that claim as a matter of law.

## B. Retaliation

Plaintiff also claims that he was unlawfully retaliated against for submitting his complaints against his District Manager. Under Title VII:

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a). Similarly to employment discrimination claims, in a case for Title VII retaliation and on a motion for summary judgment, plaintiffs must present a prima facie case of retaliation. *Banks*, 320 F.3d at 575. To satisfy his burden, "a plaintiff must show that (1) [he] participated in a Title VII protected activity, (2) [he] suffered an adverse employment action by [his] employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment action. *Porter*, 810 F.3d at 948 (quoting

*Coleman v. Jason Pharm.*, 540 F. App'x 302, 304 (5th Cir. 2013) (per curiam)). Then the burden shifts back to the plaintiff to demonstrate that the defendant's reason is actually a pretext for retaliation. *Id.*

Both parties agree that Plaintiff engaged in activity protected by Title VII when he filed his complaints against Ejiogu alleging national origin discrimination on May 20, 2013, and June 14, 2013. Plaintiff alleges that Defendant retaliated against him by committing the actions alleged in Allegation Nos. 7, 8, 9, and 10. Additionally, Plaintiff alleges that Defendant retaliated against him by (11) "tanking" his store visit rankings and (12) "talking down" to him, threatening him with termination, and writing him up.

### i.  Allegation Nos. 7, 8,  and 9

Just like above, Allegation Nos. 7, 8, and 9 fail to satisfy Plaintiff's prima facie burden because Plaintiff did not suffer an adverse employment action. However, because the definition of "adverse employment action" is different for a retaliation claim than for a discrimination claim, the Court addresses each allegation in turn. *See Burlington N. & Santa Fe Ry. Co. v. White* (*Burlington Northern*), 548 U.S. 53, 63 (2006) ("The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.") In a retaliation claim, "[a]n adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (alterations in original) (quoting *Aryain v. Wal-Mart*

*Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

In Allegation Nos. 7 and 9, the summary judgment evidence shows that not only did Plaintiff not suffer an adverse employment action but that the adverse actions he complains of did not occur at all. Plaintiff complains that he did not receive an evaluation and raise (Allegation No. 7) and that his payroll budget for his store was cut (Allegation No. 9). The undisputed summary judgment evidence, however, shows that he received a favorable annual evaluation in March 2013 and an accompanying raise in April 2013, and not only was his store payroll budget not cut following the complaints, but it actually increased. Document No. 33-8 at 3, 5; Document No. 33-11 at 2–3. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Because Plaintiff cannot show that he suffered an adverse employment action in Allegation Nos. 7 and 9, his retaliation claims under those allegations fail.

In Allegation No. 8, Plaintiff complains that Ejiogu retaliated against him by excessively monitoring his store. But this claim fails because even if Ejiogu was excessively monitoring the store, Plaintiff did not know about the monitoring before January 7, 2014. Because Plaintiff was unaware of the monitoring, the monitoring could not have dissuaded him from making a charge of discrimination and, therefore, was not materially adverse.

### ii. Allegation No. 11

Allegation No. 11 similarly fails. In Allegation No. 11, Plaintiff claims that his store visit audit scores "tanked" after he filed his complaints against Ejiogu. District Managers can rate stores during their visits and can give favorable scores (Model or Near Model) or unfavorable scores (Needs Improvement or Unacceptable). Document No. 33-12 at 3. Plaintiff argues that

before the complaints his store was ranked as "Model" with "almost perfect scores." Document No. 33-2 at 63. But the summary judgment evidence shows that Plaintiff's store was ranked as "Model" only once, on September 9, 2013, several months after Plaintiff filed his complaints. Document No. 33-11 at 2. Notably, Plaintiff's store was rated as "Needs Improvement" twice, on January 2, 2013, and March 15, 2013, before Plaintiff filed his complaints. Document No. 33-12 at 3–4. Because the summary judgment evidence demonstrates that Plaintiff's store audit scores were not worse than before he made the complaints, Plaintiff has failed to show an adverse employment action. *See Scott*, 550 U.S. at 380.

### *iii. Allegation No. 12*

Next, in Allegation No. 12, Plaintiff alleges that Ejiogu, Jones, and Augusto Castano retaliated against him for filing the May 20, 2013 complaint by "talking down" to him, threatening him with termination, and writing him up. First, Defendant has submitted evidence that Plaintiff was not written up. Document No. 33-8 at 3. In her affidavit, Jones states that she reviewed Plaintiff's personnel file and that the file does not contain any disciplinary write ups, negative performance reviews, or performance improvement plans. Document No. 33-8 at 3. Plaintiff has not submitted any evidence to the contrary. Second, even if Plaintiff was written up, write ups and "talking down" to Plaintiff do not rise to the level of material adversity. Such occurrences "instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct." *Stewart*, 586 F.3d at 332 (quoting *Burlington Northern*, 548 U.S. at 68).

Threats of termination, however, are more complicated. Before the Supreme Court issued *Burlington Northern* and broadened the definition of "adverse employment action" in retaliation cases, the Fifth Circuit routinely held that threats of termination were not adverse employment

actions. *See Breaux v. City of Garland*, 205 F.3d 150, 159–60 (5th Cir. 2000) ("Some benefit must be denied or some negative consequence must impinge on the Plaintiff's employment before a threat of discharge is actionable."). In *Burlington Northern*, however, the Supreme Court held that an employment action is adverse if it would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern*, 548 U.S. at 68.

Defendant argues that Plaintiff's allegation that he was threatened with termination is false. Document No. 35 at 22. This Court will not make credibility determinations or weigh the evidence at the summary judgment stage. *Sandstad*, 309 F.3d at 896. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At his deposition, Plaintiff testified that after he filed his May 20th complaint, he was visited in his store by Ejiogu, Jones, and Castano. Document No. 33-2 at 39. Plaintiff stated that at the meeting, Jones discouraged him from complaining and he was threatened with termination.

In response, Defendant argues that Plaintiff was not terminated or demoted after the meeting and that he was still making the same salary until his termination eight months later for falsifying company records. Document No. 33 at 40. Defendant conflates the requirements for an adverse employment action in a retaliation case with those in a discrimination case. For a plaintiff to show that he suffered an adverse employment action in a retaliation case, he is no longer required to show that he suffered from an ultimate employment decision. *See Burlington Northern*, 548 U.S. at 68. The plaintiff must simply show that the action taken by the employer would dissuade a reasonable worker from complaining of discrimination. *Id.* The Fifth Circuit has recognized that "even the *threat* of discharge can be a potent means of chilling the exercise of constitutional rights." *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992) (emphasis in

original) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968)). Any reasonable employee would hesitate before making a complaint of discrimination if he thought that he would lose his job for speaking out. As a result, when Plaintiff was threatened with termination, he suffered an adverse employment action.

In addition to suffering an adverse employment action, Plaintiff must also show that there is a causal connection between the protected activity (the May 20th complaint) and the threat of termination. *Porter*, 810 F.3d at 945. In evaluating whether a causal connection exists, the Court looks to (1) Plaintiff's past disciplinary record, (2) whether Defendant followed a policy in penalizing Plaintiff, and (3) the temporal proximity between the protected activity and the adverse action. *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011). The factors weigh in Plaintiff's favor in this case. Approximately three months before the meeting, Plaintiff had been evaluated and received a rating of "Good" overall, and Plaintiff's record is devoid of write ups or any other disciplinary measures. Document No. 33-8 at 3, 5. Further, the meeting took place within a month of Plaintiff filing his complaint. Document No. 33-2 at 40. While the fact that an adverse action occurred after an employee engaged in protected activity will not always be sufficient for a prima facie case, "close timing between the protected activity and adverse employment action may provide evidence of a causal link." *Schroeder*, 664 F.3d at 1025. The timing is close enough in this case to support a causal link, especially considering that Jones, Ejiogu, and Castano met with Plaintiff in response to his May 20th complaint.

Because Plaintiff has presented a prima facie case of retaliation, the burden now shifts to Defendant to present a legitimate, nondiscriminatory reason for threatening Plaintiff with termination. Defendant, however, has not presented any reason for its actions, instead arguing

that because Plaintiff did not suffer termination, demotion, or a cut in pay following the threats, he did not suffer from an adverse employment action. Document No. 35 at 22. As explained above, Plaintiff did not need to suffer from an ultimate employment decision to have suffered from an adverse employment action in his claim for retaliation. Plaintiff needed only to show that he suffered from an action that would dissuade a reasonable worker from complaining of discrimination. *Burlington Northern*, 548 U.S at 68. Defendant then argues that Plaintiff was terminated in January for a legitimate, nonretaliatory reason, but that argument is not relevant to whether Plaintiff was threatened with termination in May or June for a legitimate reason.

Because Defendant has not met its burden to articulate a legitimate, nonretaliatory reason for its actions, summary judgment is improper on Plaintiff's allegation that he was retaliated against with a threat of termination because of his May 20th complaint. *See Anderson*, 477 U.S. at 255 (noting that the trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial"); *Veillon v. Expl. Servs., Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989) ("A district judge has the discretion to deny a Rule 56 motion . . . if the judge has doubt as to the wisdom of terminating the case before a full trial."). As a result, Defendant's Motion for Summary Judgment with respect to Allegation No. 12 is denied.

### iv.  Allegation No. 10

Finally, in Allegation No. 10, Plaintiff alleges that his January 8th termination was retaliation for filing a complaint against Ejiogu on January 7, 2014. Document No. 34 at 10. Plaintiff's termination claim satisfies his prima facie burden because termination is undisputedly a materially adverse action and the termination is close enough in time to establish causation by timing alone. *See Porter*, 810 F.3d at 948 ("'[T]he protected act and the adverse employment

action [must be] very close in time' to establish causation by timing alone . . . ." (alterations in original) (quoting *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007)). Plaintiff filed his complaint with ERC against Ejiogu less than twenty-four hours before he was terminated, which is well within the timeframe the Fifth Circuit has previously accepted. *See id.* ("[T]his court has accepted a two-and-a-half-month gap as sufficiently close in one case.").

Because Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendant to articulate some legitimate, nonretaliatory reason for Plaintiff's termination. *Hernandez*, 670 F.3d at 657. As discussed above, Defendant has presented evidence that Plaintiff was discharged for falsifying company records, and therefore has met its burden. *See Burdine*, 450 U.S. at 257 ("[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."). So the burden shifts back to Plaintiff to show that Defendant's reason is actually a pretext for retaliation. *Porter*, 810 F.3d at 948.

"To demonstrate pretext and avoid summary judgment, [Plaintiff] must show 'a conflict in substantial evidence on the question of whether the employer would not have taken the action "but for" the protected activity.'" *Id.* (quoting *Coleman*, 540 F. App'x at 304). The summary judgment evidence shows that Plaintiff did not complete the Super Tuesday tasks and that Plaintiff marked those tasks complete on the START system. Ejiogu visited the store on January 7th and saw that the tasks were not completed. He then spoke to Plaintiff about the tasks and informed Plaintiff that Jones would be visiting the store the next day and told Plaintiff not to resist what Jones tells him. Document No. 35-3 at 6. After Ejiogu left the store, Plaintiff called ERC and filed a complaint against Ejiogu alleging that Ejiogu was retaliating against him for the

complaints Plaintiff filed in June and that Ejiogu was trying to terminate him. Document No. 33-2 at 52; Document No. 33-6 at 15. According to the summary judgment evidence, Plaintiff knew that he was likely going to be fired before he filed his complaint with ERC. Plaintiff has not presented any evidence to show that he did complete the Super Tuesday tasks or that Ejiogu was not going to terminate him before Plaintiff filed the complaint. As a result, Plaintiff cannot show that he would not have been terminated "but for" his filing of the complaint against Ejiogu on January 7th.

**CONCLUSION**

The Court, after considering the motions and responses filed by the parties and the summary judgment evidence included in the record, concludes, for the reasons set forth above, that Defendant's Motion for Summary Judgment should be granted in part and denied in part. The Court finds that Plaintiff has presented sufficient evidence with regard to Allegation No. 12 to survive summary judgment. Defendant is entitled to summary judgment on the remainder of Plaintiff's claims. Accordingly, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Document No. 33) is GRANTED in part. All of Plaintiff's claims, excepting those found in Allegation No. 12, are dismissed. The Motion for Summary Judgment is DENIED as to the claims of Allegation No. 12.

SIGNED at Houston, Texas, this 30th day of September, 2017.

_____

MELINDA HARMON

UNITED STATES DISTRICT JUDGE
